IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| T.J. WILLIAMS, JR. | § | |
|     TDCJ-CID #921940 | § | |
| V. | § | C.A. NO. C-04-325 |
| | § | |
| OWEN MURRAY, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983, asserting claims of deliberate indifference to his serious medical needs (D.E. 1). Defendants move for summary judgment to dismiss plaintiff's claims (D.E. 24). Plaintiff has not filed a response. For the reasons stated herein, it is respectfully recommended that defendants' motion for summary judgment be granted, and that plaintiff's claims be dismissed on the merits.

**I. JURISDICTION**

    The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

**II. BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

    Plaintiff is presently incarcerated at the Connally Unit in Kenedy, Texas. On the dates of the incidents at issue, plaintiff was incarcerated at the McConnell Unit in Beeville, Texas. Following an October 14, 2004 Spears hearing, service was ordered on defendants Dr. Maximilliano Herrera, physicians assistants (PA) Richard Woodcroft and Eugene Trotta, and registered nurse, David Hunt. See D.E. 14.

    In his *pro se* complaint (D.E. 1), amended complaint (D.E.7), and supplements to his complaint (D.E.22, 23, and 26), plaintiff alleges that defendants were deliberately indifferent to his serious medical needs because they: (1) delayed his access to health care; (2) ignored or failed to address

many of his sick call requests; (3) failed to prescribe the proper pain medication for his back and joint pain; and (4) failed to refer him to a specialist for his spine. Plaintiff seeks money damages in the amount of $50,000.00 for his pain and suffering and $50,000.00 for his mental pain and anguish. He also seeks injunctive relief requiring defendants to admit him to John Sealy Hospital to see a spine specialist.

### III.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer a copy of plaintiff's grievance records, Exhibit A, and medical records, Exhibit B.  See D.E. 24, Exs. A and B.

The following facts are not in dispute:

Prior to his entering the TDCJ-CID, plaintiff was involved in an oil rig accident and suffered injuries to his head, neck and back. D.E. 7 at 3. On September 18, 2002, after entering the TDCJ, but prior to his arrival on the McConnell Unit, plaintiff was seen by prison medical staff complaining of dizziness and some "shakes." D.E. 24, Ex. B at 1. The diagnosis was chronic pain, and plaintiff was prescribed medication. Id. In addition, the attending health care provider order lab work, including a thyroid panel, and scheduled plaintiff for a follow-up visit in February, 2003. Id.

On November 11, 2002, plaintiff was seen by a physician at the Jester Unit complaining of back pain. D.E. 24, Ex. B at 2. The assessment was lower back pain, and the physician ordered x-rays and prescribed Tylenol as needed. Id. X-rays taken November 11, 2002, were essentially normal, evidencing no fracture, and vertebral alignment without spondylolisthesis. Id. at 3. There was no narrowing of disc spaces. Id.

On December 9, 2002, plaintiff was admitted to the Clements Unit crisis management psychiatric ward for aggressiveness and threatening to harm himself and others. D.E. 24, Ex. B at 4-5. Plaintiff reported that he had suffered a head trauma five years earlier, and he believed his head trauma was the cause of any aberrant behavior. Id. at 4. Medical personnel noted that plaintiff wanted to be in the hospital for evaluation of his physical complaints. Id. at 5. Plaintiff was discharged on December 14, 2002 with a diagnosis of Somotoform disorder, Hypochondriasios, and Mood Disorder with Depression. Id. at 5. His medications included Norpramin. Id.

On January 15, 2003, plaintiff was seen at the Montford Unit infirmary for complaints of shaking and dizziness. D.E. 24, Ex. B at 6. No tremors were noted. Id. Plaintiff was continued on his medications. Id.

On March 10, 2003, plaintiff was admitted to the Clements Unit crisis management for threatening to inflict harm on himself. D.E. 24, Ex. B at 7. Plaintiff was treated and discharged on March 18, 2003. Id.

Plaintiff arrived at the McConnell Unit on April 18, 2003, where he underwent a mental health care screening by PA Trotta. D.E. 24, Ex. B at 8-9. PA Trotta noted that plaintiff's current health care complaint was "spine and neck pain." Id. at 8. PA Trotta scheduled plaintiff to be evaluated for seizure activity. Id.

On April 29, 2003, plaintiff was seen by PA Trotta for complaints of dizziness and pain. D.E. 24, Ex. B at 10. Plaintiff reported that he had been experiencing dizzy spells since 1997 and complained of pain due to cervical trauma. Id. PA Trotter's assessment was chronic dizzy spells and chronic cervical pain. Id. He ordered x-rays and prescribed plaintiff 800 mg. of Ibuprofen, 3 times a day. Id.

On May 19, 2003, plaintiff was seen at the psychiatric department complaining of frequent seizure activity. D.E. 24, Ex. B at 11. Plaintiff reported that a drill collar had fallen on his head in 1997, and that at one time, he had been declared incompetent by a judge. Id. Plaintiff also stated that he had marked memory loss, grand mal seizures, and frequent headaches. Id. He complained of stomach aches and lower back pain. Id. The diagnosis was status post traumatic brain injury (TBI), temporal lobe dysrthymia secondary to TBI, temporal lobe epilepsy with generalization, and mood disorder due to TBI. Id. The plan was to treat plaintiff with Valporic Acid and Tegretol, and to reevaluate him in 3 months. Id.

On July 23, 2003, plaintiff was seen by PA Woodcroft complaining of back pain radiating to the pubic area. D.E. 24, Ex. B at 12. PA Woodcroft suspected prostatitis, and he prescribed plaintiff Seftra and Ibuprofen. Id.

On August 18, 2003, plaintiff was seen by medical staff and requested a handcuff pass due to his back and neck pain. D.E. 24, Ex. B at 13.

On September 3, 2003, plaintiff was taken by wheelchair to the infirmary on an emergency basis where he was seen by Dr. Herrera. D.E. 24, Ex. B at 14. Dr. Herrera noted that plaintiff was moaning and shivering, and that his skin was hot to the touch. Id. Plaintiff also had a rumbling cough and he complained of pain and weakness. Id. Dr. Herrera's diagnosis was pneumonia, and he started plaintiff on an Albuterol inhaler and antibiotics. Id. Plaintiff was given Tylenol for pain. Id. Plaintiff was seen by PA Bartlett the next day and given his medications. Id. at 14.

On September 24, 2003, plaintiff submitted a sick call request complaining that his balance was off and that he needed a cane. D.E. 24, Ex. B at 16. Dr. Herrera denied his request for a cane and instructed plaintiff to submit a sick call request if needed. Id.

Plaintiff was seen on October 21, 2003 for a follow-up visit concerning his back pain. D.E. 24, Ex. B at 17. His medications were continued. Id.

On January 13, 2004, plaintiff was seen at Mental Health Services complaining that his current medications were no longer working and that he wanted to discuss his medications with a psychiatrist. D.E. 24, Ex. B at 18. On February 3, 2004, plaintiff was seen by Dr. Harry Faust who ordered lab work, discontinued plaintiff's previous psychiatric medications, and continued him on Valporic Acid and Tegretol. Id. at 19.

On February 10, 2004, plaintiff was seen by PA Woodcroft for complaints of back and neck pain. D.E. 24, Ex. B at 20. PA Woodcroft noted no apparent distress, and that plaintiff could get up and sit down from a chair without difficulty, despite being handcuffed in the rear. Id. In addition, plaintiff had full range of motion in his neck and back. Id. PA Woodcroft's diagnosis was musculoskeletal pain, and he prescribed plaintiff Ibuprofen. Id.

On February 26, 2004, plaintiff was seen by PA Woodcroft complaining of dizziness. D.E. 24, Ex. B at 21. PA Woodcroft's impression was upper respiratory infection, and he prescribed plaintiff Sudafed and scheduled him for a follow-up visit. Id.

A medical appointment set for March 16, 2004, was rescheduled due to the Unit being on lockdown, and an appointment for March 18, 2004, was rescheduled because no escorts were available. D.E. 24, Ex. B at 22-23. On March 19, 2004, plaintiff was seen by PA Bartlett complaining of dizziness since March 2003 and pain along his spine. Id. at 24, 25-26. PA Bartlett's impression was cervical and lumbar sprain, and he instructed plaintiff on stretching exercises. Id. at 24. He continued plaintiff on his current medications of Vaporic Acid and Tegretol, and referred plaintiff to the chronic clinic for his seizure disorder. Id. at 24, 26

5

On April 9, 2004, plaintiff reported to the infirmary complaining of right knee pain and swelling. D.E. 24, Ex. B at 28. Plaintiff related that he had injured his knee also in the oilfield accident. Id. PA Bartlett noted no swelling or instability; however, he ordered x-rays and prescribed plaintiff Motrin. Id.

On April 16, 2004, plaintiff was seen by PA Bartlett complaining of dizziness. D.E. 24, Ex. B at 29. PA Bartlett prescribed Meclizine. Id.

X-rays of plaintiff's right knee taken May 4, 2004, showed no recent fracture or acute bone pathology. D.E. 24, Ex. B at 30. The articular relationships were intact, and the soft tissues were within normal limits. Id. The radiologist impression was "probably early arthritic changes." Id.

On May 7, 2004, plaintiff was seen by PA Woodcroft for his knee pain. D.E. 24, Ex. B at 31. Upon examination, PA Woodcroft noted that plaintiff's knees were stable, but there was bilateral patellar crepitus and minimal right knee swelling. Id. PA Woodcroft's assessment was arthritis, and plaintiff was prescribed Piroxicam.

In a supplement to his complaint filed on July 11, 2005, plaintiff claims that on March 15 and 20, 2005, he submitted sick call requests to go to the infirmary. See D.E. 22, 23. On March 20, 2005, his back gave out and he collapsed to the floor. He was taken to the infirmary on a gurney. Dr. Herrera was going in and out of the room, and he told the PA and nurses to take care of plaintiff. PA Trotta diagnosed plaintiff with muscle spasms. Plaintiff objected and told PA Trotta that he could not even walk. Plaintiff may have received a cortisone shot. Plaintiff was unable to walk back to his cell and so he was transported by wheelchair.

Several weeks passed by and plaintiff was able to move only slowly for short distances. Then one day, plaintiff felt a burning sensation in his spine and was unable to move. His cellmate called for help and plaintiff was taken to the infirmary in a wheelchair. It was 4:00 p.m. Nurse Hunt just

looked at plaintiff, and then left him there all night. Plaintiff did not get a meal that evening. The next morning, Dr. Herrera told plaintiff that a muscle spasm was causing his pain, and plaintiff was returned to his cell. Plaintiff went to bed where he remained for several weeks.

### IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

## V. DISCUSSION

### A.   Official capacity claims and injunctive relief.

Plaintiff has sued defendants in their official and individual capacities. He seeks monetary damages and prospective injunctive relief ordering defendants to have him evaluated and treated by a specialist at John Sealy Hospital for his back and neck problems.

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. Kentucky v. Graham, 473 U.S. 159, 166 (1985). The Eleventh Amendment

bars a suit for money damages against a state or state agency. Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past. Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment, and it is recommended that they be dismissed.

A narrow exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or state entity, where the relief sought is injunctive in nature and prospective in effect. Kentucky, 473 U.S. at 166 (citing Ex parte Young, 209 U.S. 123 (1980)). In order to state an injunctive relief claim, a plaintiff generally must assert that a policy or custom of the governmental entity played a part in the violation of federal law. Id. The entity itself must have been a "moving force' behind the deprivation. Id.

Plaintiff does not assert that a TDCJ policy or custom was the moving force behind the alleged unconstitutional conduct. Thus, he fails to state properly a claim for injunctive relief. Moreover, even if plaintiff had pled properly a claim for injunctive relief, his request that the Court order defendants to arrange for plaintiff to see a specialist is moot because plaintiff is no longer housed at the McConnell Unit. See Harris v. City of Houston, 151 F.3d 186, 189 (5th Cir. 1998). Because plaintiff is no longer at the McConnell Unit, defendants cannot refer him to a specialist, and his claim for injunctive relief is moot.

**B.     Deliberate indifference.**

Plaintiff claims that defendants Dr. Herrera, PA Woodcroft, PA Hunt, and PA Trotta were deliberately indifferent to his serious medical needs because they delayed his receiving medical

9

treatment, ignored his sick call requests, denied him proper pain medication, and failed to send him to a specialist to evaluate and treat his neck and back pain.

"Deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Deliberate indifference describes a state of mind more blameworthy than negligence"; there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer v. Brennan, 511 U.S. 825, 835 (1994) (construing Estelle, 429 U.S. at 104). To establish an Eighth Amendment violation, an inmate must show that a prison official "act[ed] with deliberate indifference [and] exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." Id. at 37.

A disagreement with the level and type of treatment is not actionable under the Eighth Amendment. Estelle, 429 U.S. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Young v. Gray, 560 F.2d 201 (5th Cir. 1977). An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met. Domino, 239 F.3d at 756. A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. Stewart v. Murphy, 174 F.3d 530, 537 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. Banuelos, 41 F.3d at 235.

The uncontroverted evidence in this case establishes that defendants were not deliberately indifferent to plaintiff's serious medical needs. Upon his entering the TDCJ-CID system, plaintiff's medical history was taken and the medical staff were aware of his oilfield accident and the ongoing problems he claimed related to the accident. Prior to his arrival at the McConnell Unit, it had already been determined through x-rays and examination that plaintiff's spine had no fracture or abnormality. D.E. 24, Ex. B at 1-3.

Upon his arrival to the McConnell Unit, plaintiff complained of seizure activity. PA Trotta prescribed Valporic Acid and Tegretol, two medications frequently prescribed to treat seizures and nerve pain. D.E. 24, Ex. B at 8-9. Less than two weeks later, plaintiff was seen by PA Trotter again, this time complaining of dizziness and pain. PA Trotter prescribed Ibuprofen and ordered a cervical spine x-ray. D.E. 24, Ex. B at 10.

Plaintiff's medical records reveal that, on average, plaintiff was seen at least once a month in the infirmary, and often, more frequently. D.E. 24, Ex. B. Any time plaintiff complained of pain, he was prescribed a pain reliever: April 29, 2003–Ibuprofen, 800mg.; July 23. 2003– Ibuprofen, 600 mg.;September 3, 2003– Tylenol; April 10, 2004– Ibuprofen, 600 mg. Id. at 10, 12, 14, 20. He was also instructed on stretching exercises. Id. at 24. Lab work was regularly taken to monitor his Vaporate and Tegretol levels. Id. at 11, 25.

Plaintiff claims that his sick call request were ignored and that he was denied access to medical care; however, plaintiff fails to offer any evidence to support this allegation, and his bald, conclusory allegations are insufficient to support a substantive constitutional claim. Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990). He does not provide any dates on which he claims he requested treatment and was denied, and his medical records belie this allegation.

Plaintiff claims that he was denied proper pain medication; however, plaintiff never complained to a medical provider that his prescribed pain medication was not working or was not strong enough. To the extent plaintiff claims that he should have received stronger pain medication, this objection is nothing more than a dispute with defendants' course of treatment, and is not actionable. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997). Similarly, although plaintiff claims that defendants should have referred him to a spine specialist, this allegation is a mere disagreement with defendants' diagnosis and treatment.

Plaintiff claims that in March, 2005, Nurse Hunt left him in the infirmary unattended without examining him, and that he did not receive an evening meal. Although such an experience was undoubtedly unpleasant, plaintiff offers no evidence to demonstrate that Nurse Hunt was aware of a serious medical need of plaintiff, and ignored that need. At most, plaintiff has stated a claim of negligence against Nurse Hunt, not a constitutional violation. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (mere negligence fails to state a constitutional violation).

Plaintiff's medical records evidence that his sick call request were answered, he was routinely examined, diagnoses were made, and medications prescribed. This evidence rebuts plaintiff's allegations of deliberate indifference. Banuelos, 41 F.3d at 235. Defendants are entitled to summary judgment in their favor.

## VI. **RECOMMENDATION**

Plaintiff fails to establish that there exists a genuine issue of material fact regarding his claims of deliberate indifference, and defendants have established that they are entitled to summary judgment as a matter of law. Accordingly, it is respectfully recommended that defendants' motion for summary

judgment (D.E. 24) be granted and that plaintiff's claims against all defendants be dismissed with prejudice.

Respectfully submitted this 15th day of September, 2005.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE


### NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to FED. R. CIV. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).